MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
90 Park Avenue, Suite 1700
New York, New York 10016
Telephone: (212) 786-7368
Facsimile: (212) 786-7369
*Attorneys for Plaintiff*

05 CV 2349

JUDGE CHIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSÉ MORALES
& on behalf of others similarly situated,

          Plaintiffs,

      -against-

PLANTWORKS, INC. & NEIL MENDELOFF,

          Defendants.
------------------------------------------------------------X

**COMPLAINT**

**FLSA COLLECTIVE ACTION**

**ECF Case**

Plaintiff José Morales, by his attorney, Michael Faillace & Associates, P.C., alleges upon knowledge as to himself and upon information and belief as to all other matters as follows:

**NATURE OF ACTION**

1. Plaintiff José Morales ("Morales" or "Plaintiff") was employed as a landscaper for Plantworks, Inc. ("Plantworks"), which is owned and operated by Neil Mendeloff ("Mendeloff"). From August 1998 until July 2004, Defendants maintained a policy and practice of requiring Plaintiff to work over forty hours per week without paying him the minimum wage and overtime compensation for all hours worked in violation of state and federal labor laws.

2. In addition, Defendants discriminated against Plaintiff on the basis of his Mexican national origin by denying him the same rights enjoyed by non-Mexican employees with regards

to compensation and the enjoyment of all benefits, privileges, terms and conditions of that relationship.

3. Plaintiff now brings this action, on behalf of himself and similarly situated employees, to recover unpaid minimum wages and overtime premiums, liquidated damages, interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, New York Labor Law § 652 *et seq.*, and the "spread of hours" wage order of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4 and 142-2.20 (2003) (herein the "Spread of Hours Wage Order").

4. Plaintiff also seeks to recover damages against Defendants for violations of his rights under Section 1981 of The Civil Rights Act of 1866, 42 U.S.C. § 1981, New York State Executive Law §290 *et seq.* (the "Human Rights Law") and the Administrative Code of the City of New York §8-107 *et seq.* (the "City Law").

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b), 42 U.S.C. § 1981, 28 U.S.C. § 1331, and 29 U.S.C. § 2601, *et seq.* Supplemental jurisdiction over Plaintiff's state and city law claims is conferred by 28 U.S.C. § 1367(a).

6. Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred and where Defendants can be found is the Southern District of New York.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202.

8.  Prior to filing this Complaint, Plaintiff served a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with N.Y.C. Admin. Code § 8-502(c).

## PARTIES

9.  Plaintiff José Morales resides at 10 Manhattan Avenue, Apartment 1D, New York, New York 10025-4762.

10. Defendant Plantworks is a corporation organized and existing under the laws of the State of New York and is located at 28 East 4th Street, New York, New York 10003-7070.

11. Defendant Neil Mendeloff is an owner, a director, and/or an officer of Plantworks. At all times relevant to this action, Mendeloff maintained or shared operational control over Plantworks.

12. Plantworks and Mendeloff are jointly and severally liable for their failure to pay Plaintiff minimum wage and overtime as required by state and federal labor laws.

13. Defendants are subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

14. Plaintiff is a Hispanic male of Mexican national origin.

15. Plantworks provides exterior and interior landscaping services for commercial, residential and institutional customers. In addition to installing water systems and designing and maintaining landscaping, Plantworks also sells plants, top soil, nursery supplies, and retail garden supplies. Plantworks specially orders plants and supplies from vendors outside of New York for resale, and it performs services and sells goods to customers in New York and New Jersey.

16. Plaintiff began working for Defendants as a landscaper on March 8, 1997. Plaintiff's work required little skill and no capital investment. During his years of employment for Defendant, Plaintiff worked at numerous job locations in New York and New Jersey.

17. Plaintiff's primary duties were to plant trees and shrubs, design landscaping, install water systems, mow lawns, and trim hedges. As such, Plaintiff was engaged in commerce or in an industry or activity affecting commerce, and handled or transported goods in commerce at all times relevant to this action. Further, Plaintiff utilized materials or goods that originated from outside the state in the course of his work for Plantworks.

18. Plantworks employs at least 14 employees, has employees engaged in commerce, and had an annual gross volume of sales in excess of $500,000 for each year relevant to this action.

19. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

20. At all times relevant to this action, Defendants were Plaintiff's employers, possessing the power to hire and fire Plaintiff, control his terms and conditions of employment, and determine the rate and method of any compensation in exchange for his employment.

*Plantworks Failed to Pay Morales for All Hours Worked*

21. Defendants failed to compensate Plaintiff for the time he spent in preparation, cleanup, and traveling between the main office and the job site. For example, while Morales was assigned to a job site on Governor's Island, Plaintiff would have to report first to the company headquarters to pick up equipment, tools, and specific job instructions that were required each day before arriving to the job site. At the end of the day, Plaintiff would have to return the equipment to the headquarters. Although these activities were performed solely for the benefit of

Defendants and were not for Plaintiff's own convenience, Defendants failed to compensate Morales for the hours he worked performing these duties and only compensated Morales for the time he spent at the job site.

22. In addition, Morales was not compensated for the time he spent changing into his uniform each day. Defendants required Morales and other employees to wear uniforms that advertised the Plantworks name and would penalize or discipline employees if they failed to wear their uniforms. Even after Defendants began using a time clock, they required Plaintiff to change into his uniform prior to punching in each day.

23. The time spent traveling between the job site and the company headquarters, as well as the time spent changing into uniforms each day was not de minimis.

24. On many occasions, Defendants denied Morales time off for meals and breaks in violation of New York State Labor Law § 162.2. Plaintiff received neither the 30 minute noonday break period for employees who work shifts of more than 6 hours that extend over the noonday meal period.

25. Morales regularly worked over fifty hours per week. Monday through Thursday, Morales would work between eleven and twelve hours per day. On Fridays, he would work between nine and ten hours per day. When Defendants required him to work Saturdays, his workweek approached sixty hours.

26. However, Defendants failed to compensate Morales for many of the hours he worked and never provided premium pay for hours worked in excess of forty per week. In fact, his paycheck indicated that his overtime rate of pay was identical to his regular rate of pay.

27. Morales's initial regular rate of pay in 1997 was $8 per hour. Plaintiff received the following increases to his regular hourly rate of pay as follows:

   a. an increase to $10 per hour on or about March 31, 1999;

   b. $13.50 per hour on or about April 1, 2001; and

   c. $15 per hour beginning in April 2003.

28. At all times relevant to this action, Plaintiff did not receive spread of hours pay, which entitles employees to an additional one hour's pay at the basic minimum hourly wage rate where the interval between the beginning and end of an employee's workday exceeds ten hours.

29. Plaintiff did not receive sick pay, holiday pay, or vacation pay.

30. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York State Labor Law by failing to maintain timesheets and payroll records.

31. At no time during the course of this action did Plaintiff ever observe on Defendants' premises any posted notice regarding employees rights under the Fair Labor Standards Act or the New York State Labor Law and Regulations, or the procedures for filing a charge for violations of these state and federal labor laws.

*Collective Action Claims*

32. There are over 20 current and former employees that are similarly situated to Plaintiff and have been denied minimum wage and overtime compensation while working for Defendants. Morales is a representative of these other workers and is acting on behalf of their interests as well as his own interest in bringing this action.

33. Similarly situated former and current employees are readily identifiable and locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such notice, persons similarly situated to Plaintiff, who have been unlawfully deprived of

minimum wage and overtime pay in violation of the Fair Labor Standards Act will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

*Davis' Constant Acts of Harassment and Disparate Treatment*

34. In March 2004, Defendants promoted Chris Davis ("Davis"), a part-time employee who was relatively inexperienced in the landscaping business, to Supervisor.

35. Due to his inexperience and unfamiliarity with landscaping practices, Davis made numerous mistakes and often gave Plaintiff incorrect instructions. Davis would then blame Morales for the mistakes.

36. Prior to Davis becoming his supervisor, Morales always performed his job at least satisfactorily and had never received a single disciplinary action.

37. Davis subjected Morales to constant verbal abuse and consistently made derogatory remarks aimed at Plaintiff's national origin. His insults included comments such as:

   a. "Fuck you; all you Mexicans come to this country to collect welfare";

   b. "You people come here to live off of the city";

   c. "You fucking asshole, you're uneducated, you can't read or write"; and

   d. "You're an animal, and I'll make you work like one."

38. In addition, Davis told other workers that Morales was a stupid Mexican because he did not speak English.

39. Prior to Davis's promotion, Defendants had a practice of distributing the workload amongst a team in a relatively even fashion. However, Davis consistently ordered Morales to perform the most strenuous work of operating the weed whacker and permitted Plaintiff's Caucasian co-workers Dave and Charlie to perform easier work.

40. In addition, Davis harassed Plaintiff through his constant scrutiny, subjecting only Plaintiff to such intense monitoring.

41. Furthermore, Davis would not punish or discipline Caucasian employees when they arrived late or were caught sleeping on the job. However, Davis would berate, humiliate, and accuse Plaintiff for making mistakes or not working to his satisfaction.

*Defendants Terminated Morales in Retaliation for Reporting the Unlawful Behavior*

42. In 2004, Morales reported Davis's discriminatory acts and harassment to Mendeloff and Oscar, a manager. Morales also requested a transfer to a different job site as a solution.

43. Mendeloff failed to investigate and dismissed Plaintiff's complaints, thus permitting the harassment to continue.

44. On July 14, 2004, Defendants terminated Morales for alleged misconduct. Defendants claimed that Morales's work-related injury on July 11, 2004 could have been avoided had he followed Oscar's instructions that he no longer use the weed whacker that were alleged given to him on July 9, 2004. However, Oscar had never given Morales such instructions; nor had Davis assigned the weed whacking responsibilities to a different employee.

45. Defendants also claimed that they had no more work for him; yet, they hired a replacement almost immediately.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act

46. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

47. Each Defendant is an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

48. Plantworks constitutes an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(r)(1).

49. Defendants knowingly paid Plaintiff less than the federally mandated minimum wage of $5.15 per hour in violation of 29 U.S.C. § 206.

50. Defendants intentionally failed to pay Plaintiff overtime at the rate of one and one-half times his regular rate for each hour worked in excess of forty hours per week in violation of 29 U.S.C. § 201 *et seq*.

51. Defendants failure to pay Plaintiff minimum wage and premium overtime was willful within the meaning of 29 U.S.C. § 255(a).

52. Plaintiff has been damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### New York State Labor Law

53. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

54. Defendants knowingly paid Plaintiff less than the minimum wage of $5.15 per hour in violation of N.Y. Lab. Law § 652(1) and supporting regulations of the New York State Department of Labor.

55. Defendants intentionally failed to pay Plaintiff overtime at the rate of one and one-half times his regular rate (not less than $5.15 per hour) for each hour worked in excess of forty (40) hours per week in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor.

56. Defendants' failure to pay Plaintiff minimum wage and premium overtime was willful within the meaning of N.Y. Lab. Law § 663.

57. Throughout the period of Plaintiff's employment, Defendants, as a condition of Plaintiff's employment and without Plaintiff's consent, accepted and/or appropriated gratuities received by Plaintiffs and retained the entire sum in violation of N.Y. Lab Law § 196-d.

58. Plaintiff has been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### The Spread of Hours Wage Order
### of the New York Commission of Labor

59. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

60. Defendants failed to pay Plaintiff an additional hour's pay at the minimum wage of $5.15 for each day Plaintiff worked more than ten hours in violation of N.Y. Lab. Law §§ 190 et seq. and the wage order of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4 and 142-2.20.

61. Defendants' failure to pay Plaintiff an additional hour's pay for each day Plaintiff worked in excess of ten hours was willful within the meaning of N.Y. Lab. Law § 663.

62. Plaintiff has been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### The Civil Rights Act of 1866, 42 U.S.C. § 1981

63. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

64. Defendants have discriminated against Plaintiff by denying him the same rights enjoyed by non-Mexican employees with regard to compensation and the enjoyment of all benefits, privileges, terms and conditions of that relationship.

65. Plaintiff reported to Mendeloff that Davis was constantly harassing and discriminated against him on the basis of his national origin. Defendants terminated Plaintiff in retaliation for complaining about the unlawful behavior.

66. Defendants' conduct has been intentional, deliberate, and willful, conducted in callous disregard of Plaintiff's rights.

67. Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### New York State Executive Law, 15 N.Y. Exec. Law §§ 291 *et seq.*

68. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

69. Defendant is an employer within the meaning of the New York State Human Rights Law.

70. In violation of the New York State Human Rights Law, Defendants intentionally discriminated and retaliated against Plaintiff by subjecting him to disparate treatment on account of his national origin and by denying him the more favorable compensation, terms, conditions, and privileges of employment enjoyed by similarly situated employees who are not Mexican.

71. By failing to investigate Plaintiff's complaints and terminating him in retaliation for reporting the unlawful discrimination and harassment, Mendeloff directly participated in, aided and abetted the unlawful discrimination against Plaintiff on the basis of his national origin.

72. The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiff's rights.

73. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

74. Plaintiff has been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## The New York City Human Rights Law

75. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

76. Defendants are employers within the meaning of the New York City Human Rights Law.

77. In violation of the New York State Human Rights Law, Defendants intentionally discriminated and retaliated against Plaintiff by subjecting him to disparate treatment on account of his national origin and by denying him the more favorable compensation, terms, conditions, and privileges of employment enjoyed by similarly situated employees who are not Mexican.

78. By failing to investigate Plaintiff's complaints and terminating him in retaliation for reporting the unlawful discrimination and harassment, Mendeloff directly participated in, aided and abetted the unlawful discrimination against Plaintiff on the basis of his national origin.

79. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

80. Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants:

(a) Designation of this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be party plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants have violated the minimum wage and overtime provisions of the Fair Labor Standards Act and New York Labor Law, as to Plaintiff;

(c) Declaring that Defendants' violations of the Fair Labor Standards Act and New York State Labor Law were willful;

(d) Declaring that Defendants have violated New York Labor Law Spread of Hours provisions, as to Plaintiff;

(e) Awarding Plaintiff damages for the amount of unpaid wages, including minimum wages, overtime premiums, and spread of hours pay under the FLSA and New York State Labor Law;

(f) Awarding Plaintiff liquidated damages in an amount equal to the minimum wage, spread of hours pay, and overtime compensation owed pursuant to 29 U.S.C. § 216(b);

(g) Awarding Plaintiff liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to § 198 of the New York Labor Law;

(h) Awarding Plaintiff prejudgment interest;

(i) Making Plaintiff whole for all earnings he would have received but for Defendant's discriminatory and unlawful treatment, including, but not limited to, wages, back pay, front pay, and other lost employment benefits;

(j) Awarding Plaintiff compensatory damages in an amount to be proven at trial;

(k) Awarding Plaintiff punitive damages in an amount sufficient to punish and deter Defendants;

(l) Awarding Plaintiff the expenses incurred in this action, including costs and attorneys' fees; and

(m)     For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: New York, New York
       February 23, 2005

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: _____
Michael Faillace [MF-8436]
90 Park Avenue, Suite 1700
New York, New York 10016
(212) 786-7368 (phone)
(212) 786-7369 (fax)
*Attorneys for Plaintiff*
